THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| BAUM HYDRAULICS CORPORATION, a Delaware Corporation, | ) ) ) ) | 8:04CV256 |
| Plaintiff, | ) ) | **MEMORANDUM** |
| vs. | ) ) | **AND ORDER** |
| UNITED STATES OF AMERICA, | ) ) ) | |
| Defendant. | ) | |

    This is an action brought pursuant to 28 U.S.C. § 2410[1] to determine whether the Internal Revenue Service has filed a valid tax lien against the property of the plaintiff, Baum Hydraulics Corporation ("Baum-Delaware"), as transferee, nominee, or alter ego of Baum Hydraulics Corporation, a Nebraska corporation ("Baum-Nebraska"), which was determined in a prior action in this court[2] to be the nominee or alter ego of the delinquent taxpayer, David Allen ("Allen"). Baum-Delaware has moved for summary judgment, contending (1) that there can be no transferee liability based upon its purchase of Baum-Nebraska's assets because Baum-Nebraska did not become liable for Allen's unpaid taxes until after the sale, and (2) that the IRS is precluded by the doctrines of judicial estoppel and collateral estoppel from now claiming that Baum-Delaware is Baum-Nebraska's alter ego or nominee.[3]

---

[1] "[T]he United States may be named a party in any civil action or suit in any district court . . . to quiet title to . . . real or personal property on which the United States has or claims a mortgage or other lien." 28 U.S.C.A. § 2410(a) (2005).

[2] Baum Hydraulics Corp. v. United States, No. 4:01CV454, 280 F. Supp. 2d 910 (D.Neb. 2003) (Kopf, J.).

[3] The plaintiff has also filed a motion for leave to file a reply brief out of time. The motion will be granted instanter. The court notes, however, that the reply brief

## I.

Baum-Delaware's "transferee liability" argument is based entirely upon Internal Revenue Code § 6901, which provides, in part:

**§ 6901. Transferred assets**

    **(a) Method of collection.**—The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred:

        **(1) Income, estate, and gift taxes.—**

            **(A) Transferees.**—The liability, at law or in equity, of a transferee[4] of property—

                **(i)** of a taxpayer in the case of a tax imposed by subtitle A (relating to income taxes),

                **(ii)** of a decedent in the case of a tax imposed by chapter 11 (relating to estate taxes), or

                **(iii)** of a donor in the case of a tax imposed by chapter 12 (relating to gift taxes),

            in respect of the tax imposed by subtitle A or B.

---

(attached to the motion) was timely filed on March 9, 2005, eight days (six business days) after service of the defendant's brief. See Fed. R. Civ. P. 6(a) and (e).

[4] "As used in this section, the term 'transferee' includes donee, heir, legatee, devisee, and distributee, and with respect to estate taxes, also includes any person who, under section 6324(a)(2), is personally liable for any part of such tax." 26 U.S.C.A. § 6901(h) (2005).

>> **(B) Fiduciaries.**—The liability of a fiduciary under section 3713(b) of title 31, United States Code in respect of the payment of any tax described in subparagraph (A) from the estate of the taxpayer, the decedent, or the donor, as the case may be.
>
>> **(2) Other taxes.**—The liability, at law or in equity of a transferee of property of any person liable in respect of any tax imposed by this title (other than a tax imposed by subtitle A or B), but only if such liability arises on the liquidation of a partnership or corporation, or on a reorganization within the meaning of section 368(a).

26 U.S.C.A. § 6901(a) (2005) (footnote omitted).

In particular, Baum-Delaware argues that the method of collection provided in this Code section only applies where the transferor's tax liability has already accrued at the time of the asset transfer. It asserts that the prior action only determined that Baum-Nebraska was liable as Allen's alter ego or nominee as of July 5, 2001, when the IRS filed a tax lien notice against Baum-Nebraska, and that such determination was based upon evidence that monthly payments which Baum-Delaware was making to Baum-Nebraska, commencing in January 2001, were being diverted to Allen. Baum-Delaware maintains that the asset transfer was competed about ten months earlier, on February 22, 2000, when it issued a $550,000 promissory note to Baum-Nebraska in exchange for the assets.

The government does not directly dispute this argument, but instead states that it is irrelevant because "[t]he filing of a notice of federal tax lien, including one that alleges a transferee/alter ego/nominee status is not a means of asserting transferee liability under § 6901. No § 6901 assessment has been made against the plaintiff." (Defendant's brief (filing 29), p. 5.) The government concedes that Baum-Delaware's argument "may be true with respect to § 6901 liability, but it is not true with respect to transferee liability in general." (Id.) "For example," the government continues,

"28 U.S.C. § 3304(b) provides a mechanism where transferee liability can be imposed whether the subject debt arises before or after the transfer is made." (Id.) However, the government does not claim that its lien filing was made under authority of that "fraudulent transfer" provision of the Federal Debt Collection Procedures Act (FDCPA).[5]

---

[5] Subject to certain exceptions, section 3304(b) provides:

[A] transfer made or obligation incurred by a debtor is fraudulent as to a debt to the United States which arises before the transfer is made or the obligation is incurred if—

    (1)(A) the debtor makes the transfer or incurs the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation; and

    (B) the debtor is insolvent at that time or the debtor becomes insolvent as a result of the transfer or obligation; or

    (2)(A) the transfer was made to an insider for an antecedent debt, the debtor was insolvent at the time; and

    (B) the insider had reasonable cause to believe that the debtor was insolvent.

28 U.S.C.A. § 3304(b) (2005).  In an action or proceeding under the FDCPA, the government may obtain:

    (1) avoidance of the transfer or obligation to the extent necessary to satisfy the debt to the United States;

    (2) a remedy . . . against the asset transferred or other property of the transferee; or

    (3) any other relief the circumstances may require.

28 U.S.C.A. § 3306(a).

As recited in the lien notice that the IRS filed with the Register of Deeds for Douglas County, Nebraska, the applicable statutory provisions are "section[s] 6321, 6322, and 6323 of the Internal Revenue Code."[6]  (Complaint (filing 1), Ex. A.) Baum-Delaware does not specifically claim that the IRS failed to comply with any of these sections—for example, by alleging that no assessment or demand for payment was made—but it does allege that "[t]he United States unilaterally decided that Baum[-]Delaware was a transferee, nominee, or alter-ego of . . . [Baum-Nebraska], without notice to Baum[-]Delaware or an opportunity for hearing on the issue." (Complaint, ¶ V.)  The government admits this allegation.  (Answer (filing 7), ¶ 4.)

Baum-Delaware does not assert that it is entitled to summary judgment based upon the admitted lack of notice and hearing,[7] nor upon any other procedural basis.

---

[6] A federal tax lien arises by operation of section 6321, which provides:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C.A. § 6321 (2005).  The lien arises "at the time the assessment is made," 26 U.S.C.A. § 6322 (2005), but unless properly filed "shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor," 26 U.S.C.A. § 6323(a).

[7] The Eighth Circuit has stated that § 6901 "is designed to afford a summary proceeding against all transferees of assets of a delinquent taxpayer[,]" and that "[w]hat is important in transferee proceedings is that notice be given to the party against whom the Commissioner is asserting transferee liability." Bos Lines, Inc. v. C.I.R., 354 F.2d 830, 835 (8th Cir. 1965).  "If the ultimate recipient of the assets of a delinquent taxpayer, whether such recipient be the initial or a subsequent transferee, receives timely notice of the Commissioner's determination, . . . the notice requirements of the statute are satisfied." Id.

It instead seeks a substantive ruling that it has no tax liability as Baum-Nebraska's transferee. The government appears willing to concede this point for purposes of § 6901, but it denies that any assessment was made against Baum-Delaware under that Code section.[8] It also appears that the government may attempt to establish at trial that the sale of Baum-Nebraska's assets was fraudulent, and that it is entitled to enforce its lien through the FDCPA.[9]

## *II.*

The second part of Baum-Delaware's argument concerns its alleged status as Baum-Nebraska's nominee or alter ego, and is based entirely upon the course and outcome of the prior action. Essentially, it makes two points:

- The government argued and proved in the prior action that Baum-Nebraska conducted no business after its assets were sold to Baum-Delaware, and that Baum-Nebraska's sole purpose following the sale was to collect promissory note payments. Baum-Delaware contends that it is inconsistent for the government to claim now that Baum-Nebraska continued its business operations through Baum-Delaware.
- When Baum-Delaware attempted to intervene in the prior action, the government represented that it was not asserting any claim against Baum-Delaware's property.

---

[8] The lien notice only indicates that assessments were made on October 15, 1999, for estate taxes (Form 706) and estate income taxes (Form 1041). The total unpaid balance of the assessments is shown as $25,674,301.04. (Complaint, Ex. A.)

[9] Baum-Delaware replies that the only method for collection of unpaid taxes on a "transferee liability" theory is § 6901. It argues that the FDCPA does not apply because "[t]o the extent that another Federal law specifies procedures for recovering on a claim or a judgment for a debt arising under such law, those procedures shall apply to such claim or judgment to the extent those procedures are inconsistent with . . . [the FDCPA]." 28 U.S.C.A. § 3001(b) (2005).

The government's response to this judicial estoppel or collateral estoppel argument may be summarized as follows:

- Corporate separateness does not preclude a finding that Baum-Delaware is Baum-Nebraska's nominee. Also, both corporations might be found to be Allen's alter ego or nominee.
- The court specifically stated in the prior action that the legality of the asset transfer was not at issue.

### *III.*

The court's jurisdiction under 28 U.S.C. § 2410 is limited. See Granse v. United States, 932 F. Supp. 1162, 1167 (D.Minn. 1996), aff'd, 112 F.3d 513 (Table), 1997 WL 215330 (8th Cir. 1997). Thus, even though the government has admitted that the court has subject matter jurisdiction pursuant to 28 U.S.C. § 1340 (granting district courts "original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue"),[10] and even though this action parallels the prior action that was brought by Baum-Nebraska, I must question whether the issues that are being raised by Baum-Delaware concerning its liability for Allen's unpaid taxes can be decided in a "quiet title" action brought under § 2410. See In re Wireless Telephone Federal Cost Recovery Fees Litigation, 396 F.3d 922, 928 (8th Cir. 2005) ("Lack of subject matter jurisdiction cannot be waived by the parties or ignored by the court."). See also Fed. R. Civ. P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").

"Section 1340 is a general grant of jurisdiction for cases concerning the revenue code, but it does not constitute a waiver of sovereign immunity by the United

---

[10] See Complaint, ¶ II; Answer, ¶ 1. However, the government does allege that "[t]he relief sought by the plaintiff is prohibited by the Anti-Injunction Act, 26 U.S.C. § 7421." (Answer, p. 2 ("First Affirmative Defense").)

-7-

States." Freedom Mission Church v. Green Bay Packaging, Inc., 816 F. Supp. 513, 514 (E.D.Ark. 1993) (citing Murray v. United States, 686 F.2d 1320 (8th Cir.1982); Aqua Bar & Lounge, Inc. v. United States, 539 F.2d 935 (3rd Cir.1976)). "However, '§ 2410 constitutes a waiver of sovereign immunity to a suit brought by a taxpayer against the United States which challenges the validity of a federal tax lien and sale so long as the taxpayer refrains from contesting the merits of the underlying tax assessment itself.'" Id. (quoting Aqua Bar, 539 F.2d at 939-40). "It furthermore has been held that inquiry into possible procedural defects of the lien is not prohibited; i.e., a district court has jurisdiction under § 2410 to hear challenges to the procedural integrity of a lien without running afoul of the prohibition against hearing attacks on the 'merits' of an assessment." Id. (citing Robinson v. United States, 920 F.2d 1157, 1161 (3rd Cir.1990)).

"[A] distinction is drawn between contesting the merits of an assessment and lien and contesting the procedures used to implement them. A suit in the district court can be maintained where it challenges the procedural regularity of a tax lien and the methods used to enforce it, but cannot be maintained if it challenges the validity of the assessment, unless the tax is paid first." Mettenbrink v. United States, No. CV89-L-378, 1991 WL 82837, *3 (D.Neb. Apr. 8, 1991) (Urbom, J.) (citing Schmidt v. King, 913 F.2d 837, 839 (10th Cir. 1990)). See also Albers v. I.R.S., No. 4:CV95-3068, 1996 WL 196657, *3 (D.Neb. Feb. 15, 1996) (Urbom, J.) (§ 2410 permits a lawsuit regarding the procedural validity of a tax lien), aff'd, 105 F.3d 662 (Table), 1997 WL 2477 (8th Cir. 1997); Johnson v. United States, No. 4:CV92-3124, 1992 WL 464716, *3 (D.Neb. Nov. 13, 1992) (Urbom, J.)(§ 2410 cannot be employed to challenge the validity of a tax assessment); BBCA, Inc. v. United States, 733 F. Supp. 73, 74 (D.Minn. 1989) ("[I]n a quiet title action under Section 2410(a), a plaintiff may not challenge the underlying tax liability or assessment; only the procedural regularity of the lien may be challenged."). See generally Annotation, Taxpayer's Right Under 28 U.S.C. § 2410(a) to Challenge Procedures Followed in Imposing and Enforcing Federal Tax Line on his Property, 38 A.L.R.Fed. 900 (1978); Murray, 686 F.2d at 1326 n. 10 (citing cases).

## *IV.*

The foregoing legal authorities suggest that the substantive issues being raised by the pending motion for summary judgment are not properly before this court, but, before deciding this jurisdictional issue, I invite the parties to submit their separate views by filing supplemental briefs. Assuming that Baum-Delaware's liability cannot be determined in this action, the parties should also address in their briefs whether any procedural challenges to the tax lien remain for trial, or whether the action should be dismissed in its entirety. Accordingly,

IT IS ORDERED:

1. Plaintiff's motion for enlargement of time (filing 33) is granted <u>instanter</u>, and the reply brief attached to the motion shall be considered properly filed and served.

2. Ruling on Plaintiff's motion for summary judgment (filing 23) shall be held in abeyance pending supplemental briefing by the parties, as set forth below.

3. The parties shall each file a supplemental brief on or before May 23, 2005, discussing whether the court has subject matter jurisdiction with respect to the issues raised by Plaintiff's motion for summary judgment or with respect to other issues raised by Plaintiff's complaint.

4. The parties may each file a reply on or before May 30, 2005.

DATED: May 2, 2005.        BY THE COURT:

                           s/Richard G. Kopf
                           United States District Judge